IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| MARK W. ANDERSON #1465163 | § | |
| v. | § | CIVIL ACTION NO. 6:09cv244 |
| DR. KENNETH THOMPSON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Mark Anderson, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. 636(c). As Defendants in the lawsuit, Anderson named Dr. Kenneth Thompson, a physician at the Michael Unit; Dr. Murray Owen, president of the University of Texas Medical Branch; Warden John Rupert of the Michael Unit; practice manager Pam Pace; nurse manager Bobby Burns; nurse Rose Boling; and nurse Betrecia Davis.

In his complaint and at an evidentiary hearing, Anderson said that he suffered from a number of ailments, including diabetes, MRSA (an antibiotic-resistant staph infection), cardiac problems, and foot problems. He also said that he had recently developed liver and kidney problems.

In January of 2009, Anderson says, he developed an infection in his foot. He referred to the staph infection from which he suffered and said that he had been treated with ten different antibiotics, but none of these had been effective. He said that he wanted to be transferred to the jail in San Antonio, where the "doctor who teaches the physicians who work at the University of Texas Medical Branch" is on call. Anderson stated that there was no appropriate prison unit to which he could go because all of them have sick inmates.

Nurse Maggie Dotson, a TDCJ correctional nurse also present at the evidentiary hearing, testified under oath concerning the contents of Anderson's medical records. Nurse Dotson said that

1

Anderson suffered from diabetes, high blood pressure, hepatitis C, and latent syphilis. She said that he had been treated many times and had refused to go to the hospital in Galveston for treatment on at least one occasion.

Nurse Dotson stated that Anderson's medical records showed that he was non-compliant with his treatment plans for his diabetes, and that he had been counseled about this several times. On April 27, 2009, a physician's assistant named Norris noted that Anderson ate cookies and ice cream from the commissary, ate meals without taking insulin, and sometimes took insulin once a day and ate meals twice a day. Anderson said that Norris was only a physician's assistant and thus was not qualified, and that he was on the wrong kind of insulin. In addition, he said that the packaging for the insulin said that he was suppose to receive 36 units, but that Dr. Thompson had prescribed 81 units for him. Anderson said that he needed "conjunctive therapy," which he described as "treatment in a hospital, with multiple antibiotics, and regular testing," to cover all of his ailments at once, but said that UTMB had no way to provide such therapy. Anderson added that he had "40 years of diabetic experience" so he knew how to handle occasional cookies and ice cream.

Anderson stated that he was suing Dr. Thompson, the physician at the Michael Unit, for failing to properly evaluate him or provide him with the correct care. He said that Dr. Thompson had told him that the only way for him to receive proper treatment was at the Estelle Unit Regional Medical Facility, and said that Dr. Thompson knew that he could not properly treat the diabetes without also treating the staph infection.

Anderson said that he was suing Dr. Murray Owens, the head of the University of Texas Medical Branch, because Dr. Owens was in charge and therefore responsible for what went on. He stated that Warden Rupert had told him that the only way to get transferred to a medical wing at the unit was to receive a disciplinary case.

Next, Anderson said that he was suing Pam Pace, the medical director at the Michael Unit, because she was "withholding information from the Parole Board." Specifically, Anderson said that Dr. Wright had completed a release form to allow him to be considered for a medical parole, but that

Pace was holding this up. He said that Bobby Burns, the nurse manager, had been unable to get him proper orthopedic shoes, explaining that the orthopedic shoes which he had now did not help. Anderson also noted that Nurse Boling had given him a pair of medical boots but that these were also the wrong boots and they causing injury to his leg.

Nurse Dotson stated that the medical parole release form was in his records, but that it had been filled out by a physician's assistant named Egan, who had answered "no" to the question of whether Anderson should be considered for a medical release parole.

## Anderson's Medical Records

The Court has received and reviewed copies of Anderson's medical records, which are extensive. These records show that on January 14, 2009, Anderson was seen in the chronic care clinic for hepatitis C and syphilis, and a comprehensive metabolic panel was ordered, along with a test called prothrombin time (a measure of the clotting tendency of blood).

On January 29, 2009, Anderson saw Dr. Thompson with complaints of lesions on his right leg and toe. Dr. Thompson stated that Anderson's morning meal was "not proper for diabetes mellitus" and stated that Anderson's insulin should be administered at noon and that Anderson should receive some triple antibiotic ointment, foot soaks in betadine, an antibiotic called Keflex, and a pain medication called Darvocet.

On February 12, 2009, Anderson saw a physician's assistant named Cheryl Egan. She noted that Anderson had been in the hall arguing with the nursing staff, saying that he had been told he could have the Darvocet renewed every ten days and that he has a "bed sore" on the back of his left leg. Egan noted two ulcers on his left big toe, but none on his leg; she ordered that the foot soaks be discontinued, that he not wear compression stockings and shoes as long as he has lesions, that he receive a "post-op shoe" for 90 days or until the ulcer is healed, and that he apply antibiotic ointment and bandages twice a day for 30 days. The chart was sent to Dr. Thompson for review.

The next day, Anderson complained that he had not received any post-op shoes. He was told to go to the outpatient clinic to see Ms. Bussey for the shoe, and to return to the clinic if the ulcer

worsened after following recommended medical care. Anderson received medical boots on February 18; Nurse Grey noted that there were none at the Michael Unit and so the boots had to be obtained from another unit.

On March 16, 2009, Anderson saw a nurse complaining that he had a wound underneath his left foot which would not heal. The wound was about 2.5 cm x 2.5 cm with no drainage noted, and he was scheduled to see a medical provider.

On March 17, 2009, Anderson again saw Dr. Thompson for the wound on his foot. At this time, the doctor stated that Anderson had an ingrown toenail and ordered that it be removed; he also made a referral to the dermatology clinic at UTMB Hospital. However, the dermatology referral was cancelled on March 30, after Dr. Thompson performed the surgical procedure; Egan noted that Anderson's ulcer bled when the pressure dressing was removed. An "urgent referral" to the hospital was ordered instead. An entry in the medical record dated April 5, 2009, from the Byrd Unit, indicates that at that time, Anderson was a medical transient en route to his unit of assignment after returning from the hospital in Galveston. On April 12, Dr. Thompson prescribed medications including antibiotics called Keflex and Bactrim, and ordered betadine soaks; he also ordered that corrective shoes be issued again.

On April 15, Anderson was seen in the clinic by Egan; the clinic notes reflect that Anderson was "threatening legal action" and demanding to be released from prison. An expedited referral to the orthopedic department was ordered, but Egan noted that there was no medical indication for release on MRIS (medical release to intensive supervision). She also noted that Anderson was removed from the medical department "due to violent, threatening, and aggressive behavior when advised he does not qualify for MRIS." On April 23, Dr. Thompson noted that Anderson's foot seemed to be improved and that Anderson was back on Lantus (a type of insulin).

On May 12, 2009, Anderson was seen by Dr. Thompson, who noted "infected toe again" and said that Anderson complained that he was not able to wear the boot supplied by the Brace and Limb Clinic because of the pressure. He prescribed medications including Darvocet and clindamycin, and

wrote a referral to the podiatry clinic at UTMB Hospital in Galveston. On May 14, Anderson was seen by Nurse Bobby Burns, who noted that the orders for foot soaks and dressing changes had expired; Nurse Burns ordered that the soaks and dressing changes be resumed, that a follow-up appointment be scheduled in 30 days, and that new corrective shoes be issued.

On May 28, 2009, Anderson saw another physician, Dr. Wright. The doctor said that he had been called to see the lesions on Anderson's toe by the nursing staff, and noted "multiple granulating ulcerations" on his toe. He stated that Anderson should continue with the current plan of care, go to the pill window for antibiotics, and return in five days. On June 10, 2009, however, Anderson refused medical care.

Five days later, on June 15, Anderson saw Dr. Thompson, who noted that the wound on the right toe was clear of drainage. The doctor prescribed betadine soaks for 30 days and stated that the wound may need to be debrided (i.e. cleaned) at some point. He prescribed an antibiotic called Keflex and said that Anderson should see Dr. Wright for further debriding if desired.

On July 2, 2009, Anderson again saw Dr. Wright, complaining of the infection in his foot. He noted enlarging ulceration and gave Anderson a shot of an antibiotic called Rocephin, discontinued an antibiotic called cephalexin but gave him a new prescription for the same medication that he could keep on his person, ordered culture and sensitivity testing on each lesion, changed two other medications so that Anderson could keep them on his person as well, ordered a continuation of the betadine soaks, and gave Anderson bandaging materials so that he could bandage the wounds himself.

On July 22, 2009, Anderson was scheduled to see a mid-level provider but left the clinic without being seen. A week later, he was seen by Dr. Wright, who changed the prescription for cephalexin. On August 13, Dr. Wright noted that Anderson had been doing well, but that since his medications had expired, the lesions were reopening. He ordered Darvocet, betadine foot soaks, sufficient bandages for 15 days, a diabetic shoe pass, aspirin, a medication called dipyridamole (an anti-blood clotting agent), and cephalexin.

In his complaint, Anderson asked that the Court issue a "temporary restraining order to ensure reasonable medical treatment," and also requested "the return of all fees and costs of this suit, if not forthcoming monetary damages also." At the evidentiary hearing, he stated that he was not seeking monetary damages, but indicated that he wanted injunctive relief to provide him with medical care, in particular a transfer to the Bexar County Jail in San Antonio, which he said had the medical staff to treat him properly.

<u>Legal Standards and Analysis</u>

Anderson's complaint concerns his allegations of deliberate indifference to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997); <u>Jackson v. Cain</u>, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985); <u>Norton</u>, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. <u>Varnado v. Collins</u>, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. <u>Graves v. Hampton</u>, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. <u>Spears v. McCotter</u>, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and

medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Anderson's testimony, as well as the medical records which do not contradict his testimony, plainly show that he has received a substantial quantum of medical care, including transport to the hospital, numerous visits with nurses and medical providers, and prescriptions for various medications, including antibiotics, pain medication, and anti-clotting agents. His own testimony and the medical records refute any contention that the prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct showing a wanton disregard for any serious medical need. *See* Banuelos, 41 F.3d at 235. While there is no question that Anderson does in fact have serious medical needs, these needs are being addressed by the medical providers in the prison. Anderson's complaint is that the treatment which he is receiving is not as effective as he would like, which is not sufficient to set out a constitutional claim. Norton, 122 F.3d at 291; Stewart, 174 F.3d at 534-36.

Similarly, although Anderson complains that he has not received the "proper" orthopedic shoes, the record shows that he has been repeatedly ordered special shoes, and that he has been

7

referred to the Brace and Limb Clinic for the purpose of fitting him with special shoes. Anderson's dissatisfaction with the medical care that he has received does not amount to a constitutional violation, and his claim in this regard is without merit.

Anderson also complains that the medical administrator was "holding up" a release form, thereby preventing him from being considered for release on medical parole. The medical records show that Anderson was determined not to be eligible for such release. His claim on this point is without merit.

The only relief which Anderson sought, as he said at the evidentiary hearing, was that he receive "proper" medical care and that he be transferred to the Bexar County Jail, where he said that such care could be obtained. The Supreme Court has held that inmates have no right to be confined at any particular penal institution within the state. Meachum v. Fano, 427 U.S. 215, 224 (1976); *see also* Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982). Anderson has made no showing that the Bexar County Jail is the only place where he can receive medical treatment comporting with the Constitution of the United States.

Furthermore, the Fifth Circuit has held that to win a permanent injunction, a petitioner must show a clear threat of continuing illegality portending immediate harmful consequences irreparable in any other manner. Posada v. Lamb County, Texas, 716 F.2d 1066, 1070 (5th Cir. 1983). Anderson has made no such showing in this case; he has failed to demonstrate that the medical care which he is receiving represents a "continuing illegality portending immediate harmful consequences irreparable in any other manner." Anderson has not shown that he is entitled to the relief which he seeks, and so his claims are without merit.

Finally, Anderson sued Warden Rupert, saying that the warden told him that he had to get a disciplinary case in order to be transferred to a medical wing. He does not seek any relief against Warden Rupert, nor does he show any harm as a result of what the warden said to him. His claim against Warden Rupert is without merit.

Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Anderson's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous. 28 U.S.C. §1915A. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED. Finally, it is

ORDERED that a copy of this opinion shall be sent to the Administrator of the Three Strikes List in Tyler, Texas.

So **ORDERED** and **SIGNED** this  4   day of  **March, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE